UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LINDA L.[1],

                              Plaintiff,        19-CV-1129-FPG

v.                                                   DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

## INTRODUCTION

On October 9, 2012, Plaintiff filed an application for disability insurance benefits ("DIB"), alleging disability beginning on July 26, 2012. Tr.[2] at 142-49. After the application was initially denied, Plaintiff timely requested a hearing. Tr. 79-80. On February 18, 2015, Plaintiff appeared by video with her attorney, Jessica Welker, Esq., and testified before Administrative Law Judge ("the ALJ"). Tr. 32-62. On March 4, 2015, the ALJ issued a decision finding Plaintiff not disabled. Tr. 8-20. After the Appeals Council denied Plaintiff's request for review, Plaintiff brought an action pursuant to Title II of the Social Security Act (the "Act") seeking review of the final decision of the Commissioner. On July 9, 2018, the Honorable Leslie G. Foschio issued a decision remanding the matter for further proceedings. Tr. 559-77. On October 2, 2018, following the remand order, the Appeals Council vacated the ALJ's March 4, 2015 decision, and remanded the matter for further proceedings consistent with the remand order issued by Judge Foschio. Tr. 579-81.

---

[1] In accordance with the Standing Order dated November 18, 2020, regarding the identification of non-government parties in Social Security opinions, available at http://www.nywd.courts.gov/standing-orders-and-district-plans, Plaintiff is identified by her first name and last initial.

[2] "Tr." refers to the administrative record in the matter. ECF No. 6.

1

On April 2, 2019, Plaintiff appeared at a new hearing with her counsel, Courtney Frank, Esq., and testified before ALJ Melissa Jones. Tr. 483-533. A Vocational Expert ("VE"), Eric Dennison, and Dr. Allan Duby, medical expert, also testified at the hearing. Tr. 513-31. The ALJ issued an unfavorable decision on April 26, 2019. Tr. 462-73. Plaintiff did not request review of the ALJ's decision by the Appeals Council, nor did the Appeals Council assume jurisdiction, making the ALJ's decision the final decision of the Commissioner. Subsequently, Plaintiff brought the instant action pursuant to Title II of the Act seeking review of the final decision of the Commissioner which denied her application for DIB.[3] ECF No. 1. Presently before the Court are the parties' competing motions for judgment on the pleadings. ECF Nos. 12, 16. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is DENIED, the Commissioner's motion for judgment on the pleadings is GRANTED.

## LEGAL STANDARD

### I. District Court Review

The scope of this Court's review of the ALJ's decision denying benefits to Plaintiff is limited. It is not the function of the Court to determine *de novo* whether Plaintiff is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, so long as a review of the administrative record confirms that "there is substantial evidence supporting the Commissioner's decision," and "the Commissioner applied the correct legal standard," the Commissioner's determination should not be disturbed. *Acierno v. Barnhart*, 475 F.3d 77, 80-81 (2d Cir. 2007). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brault*, 683 F.3d at 447-48 (internal citation and quotation marks omitted).

---

[3] The Court has jurisdiction over this matter under 42 U.S.C. § 405(g).

## II.     Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At Step One, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to Step Two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to Step Three.

At Step Three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id.* § 404.1509, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to Step Four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the

Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I.  The ALJ's Decision

The ALJ found that Plaintiff met the insured status requirements of the SSA through December 31, 2016. Tr. 465. At Step One of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity from the alleged onset date of July 26, 2012. *Id.* At Step Two, the ALJ found that Plaintiff suffered from two severe impairments: fibromyalgia and lumbar spine osteoarthritis. *Id.* The ALJ also found that Plaintiff's depression, anxiety, ventral hernia, gastroesophageal reflux disease, Raynaud's syndrome, right hip labral tear, asthma, and chronic obstructive pulmonary disease (COPD) were non-severe impairments. Tr. 465-67.

At Step Three of the analysis, the ALJ found that the severity of Plaintiff's impairments did not meet or equal the criteria of any Listing. Tr. 457-58. The ALJ then determined that Plaintiff retained the RFC to perform a full range of light work defined by the regulations, except that she was able to

> lift, carry, push, or pull zero to ten pounds frequently and 11 to 20 pounds occasionally, sit for two hours at one time for a total of seven hours in a day, stand for one hour at a time for a total of three hours in a day, walk for one hour at a time for a total of three hours in a day, stand and walk for a maximum combined total of five hours in a day, continuously reach overhead or other directions, continuously push or pull at the limits set previously, continuously finger and feel bilaterally; frequently handle or operate foot controls, climb ramps or stairs, ladders, ropes or scaffolds, frequently balance and stoop; frequently work at unprotected heights, around heavy moving mechanical parts, or drive as part of job duties; frequently work in humid conditions, frequently be exposed to fumes odors dusts gases and other pulmonary irritants, and occasionally kneel, crouch, crawl, and be exposed to extreme cold, extreme heat, or vibration.

4

Tr. 468.

At Step Four of the sequential analysis, the ALJ found that Plaintiff could perform her past relevant work of a caseworker and loan officer. Tr. 472. Even though the ALJ determined that Plaintiff could perform her past relevant work, the ALJ proceeded to Step Five, where she determined that there were jobs available in significant numbers in the national economy that a person of Plaintiff's age, education, and work experience could perform. Tr. 472-73. Specifically, the ALJ found that Plaintiff could work as an information clerk, ticket taker, or toll collector. Tr. 473.

## II.  Analysis

Plaintiff advances several arguments in support of her application, essentially arguing that the RFC determination was not supported by substantial evidence. ECF No. 12-1 at 19-30. Specifically, Plaintiff submits that the ALJ failed to follow this Court's and the Appeals Council's remand orders when she did not obtain a functional assessment from Plaintiff's treating provider, and when she failed to account for Plaintiff's chronic pain, fatigue, and other episodic symptoms in her RFC finding. *Id.* Plaintiff further argues that the ALJ's reliance on the opinion of a medical expert was improper and that the ALJ was obligated to obtain a medical opinion from Plaintiff's treating provider prior to seeking an opinion from a non-examining and non-treating medical expert. *Id.*

Relevant regulations provide that, on remand from the Appeals Council, "[t]he administrative law judge shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order." 20 C.F.R. § 404.977 (b). "The ALJ's failure to abide by the directives in an Appeals Council remand order

5

constitutes legal error requiring remand." *Parks v. Colvin*, No. 15-CV-6500-FPG, 2017 WL 279558, *3 (W.D.N.Y. 2017).

In the present case, the Appeals Council remanded the case for a new hearing and development of the record consistent with the opinion issued by Judge Foschio. Tr. 581. In his opinion, Judge Foschio determined that the ALJ did not properly evaluate Plaintiff's fibromyalgia at Step Three of the sequential analysis, and, as a result, remanded the case for proper application of SSR 12-2P (Titles II and XVI: Evaluation of Fibromyalgia) and for consideration of whether Plaintiff's fibromyalgia meets the criteria for inflammatory arthritis under Listing 14.09. Tr. 570-73. Because the initial record was void of any evidence discussing Plaintiff's abilities to perform work-related functions, Judge Foschio superficially determined that remand was warranted "to obtain an RFC assessment preferably from one of Plaintiff's treating sources who can provide a 'longitudinal' picture of Plaintiff's impairment." Tr. 576.

Plaintiff reads this instruction categorically as if the ALJ was required to obtain an RFC assessment *only* from one of Plaintiff's treating physicians. ECF No. 12-2 at 20. The Court, however, disagrees because, while instructing the ALJ to obtain an assessment regarding Plaintiff's work-related limitations, Judge Foschio did not command the ALJ to obtain it solely from a treating physician, and, instead, simply suggested that it was *preferrable* to obtain it from one of Plaintiff's treating sources. Tr. 576 ("[T]he ALJ is required upon remand to obtain an RFC assessment preferably from one of Plaintiff's treating sources who can provide a 'longitudinal' picture of Plaintiff's impairment."). Additionally, Plaintiff's argument is misplaced because it ignores the main reason why Plaintiff's case was remanded by this Court in the first place. Specifically, aside from the ALJ's failure to properly evaluate Plaintiff's fibromyalgia under the requirements of SSR 12-2P at Step Three, the original record was

"devoid of any assessment of Plaintiff's RFC completed either by one of Plaintiff's treating physicians or by a consultative physician." Tr. 574. Having concluded that the record only contained medical findings diagnosing Plaintiff's impairments and was lacking an opinion that translated such findings into her specific functional limitations, Judge Foschio, on remand, instructed the ALJ to obtain an opinion about the impact of Plaintiff's impairments on her ability to work. Tr. 574-76. Here, the ALJ did exactly that when she obtained an opinion about Plaintiff's functional abilities from Dr. Duby, an impartial medical expert who testified at the hearing, and relied on it when she formulated Plaintiff's RFC.

Plaintiff disagrees with the ALJ's reliance on Dr. Duby's opinion and submits that she was required to contact Plaintiff's treating physician Dr. Carsens instead. ECF No. 12-1 at 20-26. However, this argument is also misplaced as it ignores the well-recognized principle that the ALJ's duty to develop the record is not absolute, and, as such, does not arise where the ALJ already possesses sufficient evidence to make an RFC determination. *See* 20 C.F.R. § 404.1520b(a) ("If all of the evidence we receive, including all medical opinion(s), is consistent and there is sufficient evidence for us to determine whether you are disabled, we will make our determination or decision based on that evidence."); *see also Janes v. Berryhill*, 710 F. App'x 33, 34 (2d Cir. 2018) (the ALJ "is not required to develop the record any further when the evidence already presented is adequate for [the ALJ] to make a determination as to disability") (internal citations omitted). Consistent with that notion, the regulations do not mandate that the ALJ recontact a claimant's treating physician in each case. Instead, they provide that the ALJ *may* do so, and only when the record is inconsistent or insufficient to determine whether the claimant is disabled. *See* 20 C.F.R. § 404.1520b(b) (emphasis added). Where, as here, there are no "obvious gaps" in the record, the ALJ is not required to seek additional

7

information from Plaintiff's primary treating source. *Rosa*, 168 F.3d at 79 n.5 ("[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim.") (quotations omitted); *see also Lowry v. Astrue*, 474 F. App'x 801, 804 (2d Cir. 2012) (summary order) (ALJ was not required to re-contact treating source for a medical source statement because the record contained complete medical history that the ALJ relied on to determine Plaintiff's RFC).

Here, consistent with the prior remand order, the ALJ obtained a medical opinion about Plaintiff's functional limitations from Dr. Duby, admitted additional medical records during the hearing, and kept the record open for one week after the hearing to receive additional records from Plaintiff's treating sources based on the request made by Plaintiff's counsel at the hearing. Tr. 489-91. Notably, Plaintiff's counsel neither submitted additional evidence post-hearing, nor requested an extension of time to submit such outstanding records. Tr. 462. This is important because courts do not find error in an ALJ's alleged failure to develop the record, where, as here, the ALJ kept the record open to receive further evidence after the hearing, but counsel failed to either provide such evidence or request the ALJ's assistance in obtaining them. *Jordan v. Comm'r of Soc. Sec.*, 142 F. App'x 542, 543 (2d Cir. 2005).

Additionally, the Court does not find that the ALJ erred in relying on the testimony of Dr. Duby in forming Plaintiff's RFC. While the Court recognizes that Dr. Duby was not Plaintiff's primary treating physician and has never examined her, this alone does not render his opinion invalid. *See, e.g., Frey ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record.");

8

*Hancock v. Barnhart*, 308 F. App'x 520, 521 (2d Cir. 2009) (summary order) (holding that ALJ's decision to credit the opinion of a medical expert over that of a treating physician was supported by substantial evidence); *David W. v. Comm'r of Soc. Sec.*, No. 8:17-CV-0734 (CFH), 2018 WL 6088095, at *8 (N.D.N.Y. Nov. 20, 2018) ("When assessing a claimant's RFC, an ALJ is entitled to rely on opinions from both examining and non-examining State agency medical consultants because these consultants are qualified experts in the field of social security disability."); *Cruz v. Comm'r of Soc. Sec.*, No. 16-CV-965, 2018 WL 3628253, at *6 (W.D.N.Y. July 31, 2018) ("[A]n ALJ is free to give great weight to the opinion of a non-examining medical expert as long as their opinions are supported by substantial evidence." (internal quotation marks omitted)).

Here, Dr. Duby was a rheumatologist with program knowledge, who was also certified in internal medicine, and who provided the only opinion of record regarding Plaintiff's functional limitations stemming from her severe and non-severe impairments. Tr. 514-23. His hearing testimony demonstrated that he reviewed Plaintiff's medical record in great detail, which left no doubt about the basis for Plaintiff's RFC. Not only did Dr. Duby refence specific medical records when he opined on Plaintiff's RFC, but he also identified the reasons why he believed these records documenting Plaintiff's history of musculoskeletal complaints were poorly developed with respect to her fibromyalgia. Tr. 517. In fact, Dr. Duby reiterated that the record, despite mentioning Plaintiff having trigger points during her physical examinations, did not address the number of trigger points and did not exclude any other disorders that could cause similar symptoms, the discussion of which is necessary for classification of fibromyalgia under SSR 12-2P.[4] Tr. 517, 520. In reaching conclusions

---

[4] SSR 12-2P sets forth two criteria for classification of fibromyalgia, which includes either 1) a history of widespread pain, at least 11 positive tender points, and evidence that other disorders that could cause symptoms and signs were

regarding Plaintiff's RFC, Dr. Duby also contrasted the opinions of Plaintiff's primary physician Dr. Carstens (who had stated that Plaintiff was not able to work) with the rest of the record, and concluded that they were not supported by Dr. Carsten's or any of her other providers' records as they did not contain specific functional limitations regarding Plaintiff's work-related abilities. Tr. 522.

The Court also finds that Dr. Duby's opinion was supported by the record, which demonstrated that – despite complaining of musculoskeletal pain, fatigue, spasms, stiffness, and tenderness of her joints, GERD, and COPD – Plaintiff's examinations were often nonremarkable, revealing Plaintiff was not in acute distress and denied having any disabling symptoms. Tr. 1054, 1058, 1080-81, 1105-07, 1118, 1263-64, 1268, 1272, 1276, 1319, 1340, 1514, 1519, 1521, 1523-34. Plaintiff reported improvement of her symptoms with conservative treatment and her testing either showed normal ranges or only mild impairments. Tr. 327-32, 371-72, 377, 379. Similarly, Plaintiff had normal mental health evaluations, and even though her providers continued to diagnose her with anxiety and depression, and prescribe her anti-anxiety medication, Plaintiff had nonremarkable mental health examinations and often reported significant reduction of her symptoms after proper medication intake, utilizing relaxation and distraction techniques, physical activity, and communication with friends as prescribed by her treating psychologist. Tr. 1054, 1075, 1263, 1272, 1365-67, 1370-72, 1375-77, 1381-82, 1385-87, 1390-92, 1395-97, 1400-02, 1419, 1421-24, 1428, 1454, 1465-77, 1507, 1524.

---

excluded; or 2) a history of widespread pain, repeated manifestation of six of more fibromyalgia signs or conditions, and evidence that other disorders that could cause repeated manifestations of signs were excluded. S.S.R. 12-2P, at *3, 2012 WL3104869 (July 25, 2012).

10

In assessing a claimant's RFC, the ALJ must consider all of the relevant medical and other evidence in the record to assess the claimant's ability to meet the physical, mental, and other requirements of work. It is within the province of the ALJ to weigh conflicting evidence in the record and credit that which is more persuasive and consistent with the record as a whole. *See, e.g., Veno v. Barnhart,* 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve."); *Schaal v. Apfel,* 134 F.3d 496, 504 (2d Cir. 1998) ("It is for the SSA, and not this court, to weigh the conflicting evidence in the record."). Because Plaintiff has presented no medical evidence of functional limitations greater than those found by the ALJ, Plaintiff has failed to meet her burden to demonstrate that she had a more restrictive RFC than found by the ALJ. *See Smith v. Berryhill,* 740 F. App'x 721, 726 (2d Cir. 2018) (summary order) (plaintiff failed his duty to prove a more restrictive RFC). Therefore, for the reasons stated above, the Court finds that the RFC determination was supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (ECF No. 12) is DENIED, and the Commissioner's motion for judgment on the pleadings (ECF No. 16) is GRANTED. The Clerk of Court is directed to enter judgment and close the case.

**IT IS SO ORDERED.**

Dated: June 3, 2021
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court